IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION LEE MCBRIDE, | Civil Action No. 14-1129 |
| Plaintiff, | Magistrate Judge Lisa Pupo Lenihan |
| v. | ECF No. 18 |
| ROBERT O'BRIEN *of the* *Allegheny County Adult Probation Services*, | |
| Defendant. | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Dion Lee McBride ("Plaintiff") filed a Complaint on September 8, 2014, with a subsequent Amended Complaint filed on December 23, 2014.[1] *See* ECF Nos. 4 & 16. The Complaints allege that Defendant Robert O'Brien ("Defendant") unlawfully issued a Violation of Probation Detainer ("VOP Detainer") against Plaintiff without authority or jurisdiction to do so and that Plaintiff was denied his due process rights in connection with his violation of probation proceedings. Also asserted is a claim that Plaintiff was denied his right to compulsory process under the Sixth Amendment to the United States Constitution and a claim for false imprisonment under Pennsylvania state law.

---

[1] As noted by Defendant in his brief in support of this Motion, Plaintiff's Amended Complaint does not reproduce the factual allegations contained in his original Complaint. Following the filing of Plaintiff's original Complaint, Defendant filed a Motion to Dismiss to which Plaintiff responded by filing a Brief in Opposition. Plaintiff, however, also filed an Amended Complaint on the same day, and his Amended Complaint seems to abandon several of his original claims. Therefore, the Court will assume, as did Defendant, that Plaintiff intended to supplement his original Complaint rather than replace it, and will treat it as one cohesive pleading for purposes of this Opinion.

1

A. **Factual Background**

The following background is taken from the Commonwealth's Motion to Dismiss in Civil Action No. 13-54, wherein Plaintiff made similar challenges to the VOP Detainer and his violation of probation proceedings by way of a petition for writ of habeas corpus. The Court takes judicial notice of those proceedings and of the exhibits attached to the Commonwealth's Motion to Dismiss in CA No. 13-54, which are all public records in connection with Plaintiff's state court criminal proceedings, and also the exhibits attached to Defendant's Motion to Dismiss in this case.[2]

> On November 10, 2006, at CC No. 200701101, Petitioner, Dion Lee McBride, was arrested and charged with having committed on November 10, 2006, Count 1, Persons not to Possess a Firearm, Count 2, Possession with Intent to Deliver a Controlled Substance (Cocaine), Count 3, Possession of a Controlled Substance Drugs, Device or Cosmetic (Cocaine), Count 4, Possession of a Firearm with an Altered Manufacturer's Number, Count 5, Escape, Count 6, Resisting Arrest or Other Law Enforcement, Count 7, Simple Possession (Marijuana), and Count 8, Possession of Drug Paraphernalia. Petitioner was committed to the Allegheny County Jail on these charges.
>
> On November 15, 2006, Petitioner appeared at the Pittsburgh Municipal Criminal Court and informed of the charges against him (those charges aforementioned). At said court appearance, all charges were held for court and

---

[2] A federal court, when contemplating a motion to dismiss, is permitted to consider certain materials outside of the pleadings, such as matters of public record and indisputably authentic documents attached to a motion to dismiss. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2. (3d Cir. 2006) (citing *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). All of the documents attached to Defendant's Motion to Dismiss will be considered because they are matters of public record and/or indisputably authentic documents. *See Streshenkoff v. Tutko*, 2014 WL 4262177, at *5, n.3 (W.D. Pa. Aug. 27, 2014) (a detainer is both an indisputably authentic document, as well as a public document); *Wims v. New York City Police Dept.*, 2011 WL 2946369, at *3, n.2 (S.D.N.Y. July 20, 2011) ("The state prosecution of an individual is a matter of public record, of which a court may take judicial notice."); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice").

bond was set at $25,000.00. Subsequently, Petitioner failed to post bond and remained incarcerated at the Allegheny County Jail.

On January 17, 2007, Petitioner, represented by David S. Bahuriak, Esquire, attended a preliminary hearing for the charges listed at CC No. 200701101.

On April 9, 2007, Petitioner was formally arraigned.

On August 22, 2007, Petitioner appeared before the Honorable Randal B. Todd of the Allegheny County Court of Common Pleas and entered into a negotiated guilty plea. (*See* Respondent's Exhibit 1). Petitioner also executed a Guilty Plea Explanation of Defendant's Rights Form. Petitioner pled guilty to Counts 1, 2, 3, 4, 6, 7, and 8. The Commonwealth agreed to withdraw Count 5, Escape. Petitioner was sentenced at Count 2, Possession with Intent to Deliver a Controlled Substance, to 2 to 5 years of confinement (with a recommendation of boot camp); the Commonwealth agreed to waive the mandatory 5 year sentence. Petitioner was also sentenced to 2 years of probation at Count 1, Persons not to Possess a Firearm, to be served consecutive to that imposed at Count 1. No further penalty was imposed at Counts 3-4, and 6-8. Petitioner's minimum incarceration date was August 21, 2009. Petitioner's maximum incarceration date was August 21, 2012.

Petitioner was allowed to serve his sentence at SCI Camp Hill and was admitted into their boot camp program, as recommended by Judge Todd at the time of sentencing.

Petitioner was paroled on September 10, 2008, and placed under state supervision. Upon release, and part of the boot camp program, on September 10, 2008, Petitioner was sent to Gateway Braddock Half Way House for 90 days. While at Gateway Braddock, Petitioner received a sanction for being unaccountable for 12 hours. Therefore, as part of the sanction, Petitioner was sent halfway back, an intermediate or alternative sanction to revocation for technical parole violators which does not involve a return to prison.

On January 5, 2009, Petitioner was sent back to the renewal center for 90 days due to being sanctioned for unaccountability. On February of 2009, upon release from the renewal center, Petitioner was released to a home address in Wilkinsburg, Pennsylvania.

Due to being sanctioned for curfew violation and consumption of alcohol, Petitioner, on October 22, 2009, was placed in lockdown at a facility for 90 days.

Upon completion of his 90 day sanction, Petitioner was released again to a home address in Wilkinsburg, Pennsylvania.

On April 24, 2012, Petitioner was charged by criminal complaint filed by the Office of Attorney General at CC No. 20121083714 for having committed on March 13, 2012, the following offenses: Count 1, Theft by Deception – False Impression; Count 2, Access Device Fraud; Count 3, Identify Theft; Count 4, Criminal Use of Communication Facility; Count 5, Unlawful Use of Computer – Access to Disrupt Function; Count 6, Computer Trespass – Remove Data; Count 7, Criminal Attempt – Theft by Deception – False Impression; Count 8, Dealing in Proceeds of Unlawful Activities; Count 9, Conspiracy – Identity Theft; Count 10, Aiding Consummation of Crime; Count 11, Person Not to Possess a Firearm; and Count 12, Willfully Attempt to Evade or Defeat Tax. Petitioner was arrested on April 26, 2012 for having committed the aforementioned charged offenses. When arrested, Petitioner still had approximately four months remaining on his state parole. Accordingly, the State placed a detainer on Petitioner for violating his parole.

On May 10, 2012, the Commonwealth of Pennsylvania Board of Probation and Parole provided Petitioner with written notice of his probation violation charges at CC No. 200701101, which also listed Petitioner's new criminal charges at CC No. 201210837.

On August 3, 2012, and completed on August 17, 2012, a preliminary hearing was held at CC No. 201210837 before Magisterial District Judge Richard G. King. At the conclusion of Petitioner's preliminary hearing, probable cause was established to hold the charges for court.

On August 21, 2012, Petitioner's detainer was lifted at CC No. 20121083728.[3] Judge Todd then issued a detainer for Petitioner for violating the 2 year county probation sentence imposed at CC No. 200701101.[4] Petitioner's minimum sentencing date for his probation was August 21, 2012; his maximum sentencing date for probation expire[d] on August 21, 2014.

On September 5, 2012, Petitioner, through Attorney David S. Shrager, filed a Petition to Lift Detainer with the Allegheny County Court of Common Pleas at CC No. 200701101.

On September 27, 2012, Judge Todd denied Petitioner's Motion to Lift Detainer.

---

[3] The Detainer Lift contains the following note: "[p]lease note that . . . Judge Todd's VOP detainer should be in place." *See* Def.'s Ex. E, ECF No. 19-5, *Detainer Lift*.

[4] Defendant Robert O'Brien is identified as the court liaison probation officer on the VOP Detainer, which directed the Warden of the Allegheny County Jail to detain Plaintiff for a violation of probation. *See* Def.'s B, ECF No. 19-2, *Judge Randal B. Todd's Violation of Probation Detainer*.

On October 2, 2012, Petitioner was formally arraigned at CC No. 201210837 whereby all aforementioned charges were held for court.

On October 24, 2012, Petitioner, *pro se*, filed a Motion to Reconsider Lifting the Detainer at CC No. 200701101.

Also, on October 24, 2012, the Allegheny Department of Court Records, Criminal Division, received Petitioner's *pro se* Motion to be Released from Pre-Trial Confinement in Accordance with Pa.R.Crim.P. 600(e).

On October 25, 2012, the Pennsylvania Superior Court received Petitioner's Notice of Appeal, which stated that this was an appeal from the "judgment to ignore my motion to be released in accordance with Rule 600(e)." On October 26, 2012, the Pennsylvania Superior Court, Office of the Prothonotary, forwarded Petitioner's appeal to the Allegheny County Clerk of Court, Criminal Division; said document was received by the Clerk of Court on October 29, 2012.

Also, on October 26, 2012, Petitioner, *pro se*, filed a Motion for a Gagnon I Hearing at CC No. 200701101 with the trial court.

On November 7, 2012, the Allegheny County Department of Court Records, Criminal Division, received Petitioner's *pro se* Petition for Writ of Habeas Corpus.

On November 19, 2012, Petitioner, *pro se*, filed a Petitioner for Writ of Habeas Corpus with the Pennsylvania Superior Court.30 On November 28, 2012, the Pennsylvania Superior Court entered a miscellaneous docket order stating that "Petitioner's Petition is referred to Attorney Ronald Hayward pursuant to *Commonwealth* v. *Jette* for possible further action on the part of Attorney Hayward."

On November 20, 2012, Petitioner, through Attorney Eric A. Jobe, filed a motion to lift Petitioner's detainer at CC No. 200701101 or in the alternative transfer the detainer to house arrest pending resolution of CC No. 201210837.

On January 8, 2013, Petitioner filed a Petition for Writ of Mandamus with the Pennsylvania Superior Court. On January 9, 2013, the Pennsylvania Superior Court entered a miscellaneous docket Order stating that "as Petitioner is represented by Attorneys David Shrager, Eric Jobe, and Rebecca Lynn Hudock as indicated by trial court docket entries, the Prothonotary shall forward copies of the Petition for Writ of Mandamus and this Order to Attorney's Shrager, Jobe, and Hudock. Copies of Petition and Order sent 1/9/2013."

On January 24, 2013, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus with the United States District Court for the Western District of

> Pennsylvania raising claims relating to alleged constitutional violations at CC Nos. 200701101 and 201210837.
>
> On February 27, 2013, the Court issued an Order requiring the United States Marshal to make service of the Order, with a copy of the Petitioner's petition, on the Warden at Allegheny County Jail, the District Attorney of Allegheny County, and the Pennsylvania Attorney General's Office. The Commonwealth was served with the Petitioner's Habeas Corpus Petition on March 9, 2013. This Court, therefore, ordered the Respondents to respond by April 1, 2013.
>
> On March 13, 2013, Petitioner's bond was revoked at CC No. 201210837.
>
> On March 14, 2013, Petitioner, through Attorney Erika P. Kreisman, filed a Motion to Lift Petitioner's Detainer at CC No. 200701101.
>
> On March 21, 2013, Judge Todd denied Petitioner's motion to lift Petitioner's detainer or to transfer said detainer to house arrest at CC No. 200701101.
>
> On March 28, 2013, the Respondents spoke with Attorneys Michael Waltman and Matthew Brungo, with Waltman Brungo, LLC, who confirmed that they have recently been appointed to represent Petitioner at CC No. 201210837.
>
> Petitioner's trial at CC No. 201210837 [has not yet occurred]. Petitioner's Gagnon II hearing at CC No. 200701101 will be scheduled for the next violation hearing that takes place after resolution of Petitioner's trial at CC No. 201210837. Judge Todd will preside over both Petitioner's trial and Petitioner's Gagnon II hearing.

*McBride v. State of Pennsylvania*, CA No. 2:13-cv-54, ECF No. 12 (W.D. Pa. Apr. 5, 2013)

(Commonwealth's Motion to Dismiss Petition for Writ of Habeas Corpus) (footnotes and

citations omitted).

### B. <u>Standard of Review</u>

Defendant has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). The United States Court of Appeals for the Third Circuit summarized the standard to

be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of
> Civil Procedure, a plaintiff must come forward with "a short and plain statement

> of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

Because Plaintiff is proceeding without the aid of counsel, he must be accorded substantial deference and liberality. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that a *pro se* complaint, "however inartfully pleaded" must be held to "less stringent standards than formal pleadings drafted by lawyers"); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Nevertheless, *pro se* litigants still must allege sufficient facts in their complaints to support a claim. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)). They also must abide by the same procedural rules that apply to all other litigants. *Id.* (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). As summarized by the United States Court of Appeals for the Eighth Circuit:

> When we say that a *pro se* complaint should be given liberal construction, we mean that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

*Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Id.* (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

7

## C. Discussion

Plaintiff's claims stem from the issuance of a VOP Detainer that was lodged against him on August 20, 2012. Plaintiff believes that the VOP Detainer was issued to keep him confined in jail so that he would be unable to gather important documents necessary to aid in his defense against the new criminal charges that were brought against him at CP-02-CR-0010837-2012. He claims that the Attorney General's Office had Defendant issue the VOP Detainer after they found out that he was going to be released pursuant to the PBPP's Detainer Lift on August 21, 2012. Plaintiff states that, as a result of being held on the VOP Detainer, his landlord repossessed his property and destroyed important documents, including the contact information for his employees who he claims are necessary defense witnesses.

Plaintiff challenges Defendant's authority and jurisdiction to issue the VOP Detainer and also claims that he was denied due process in connection with his violation of probation proceedings. He further claims that he was denied his Sixth Amendment right to secure witnesses in his favor for his criminal defense and that he was falsely imprisoned because the VOP Detainer was issued unlawfully.

### 1. Heck v. Humphrey

As an initial matter, the Court finds that Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court ruled that a section 1983 claim for damages arising from a criminal conviction does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486-87 (footnote omitted).[5] *Heck* has been extended to civil rights cases challenging parole and probation revocations. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (parole revocation); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (holding *Heck* "applies to proceedings that call into question the fact or duration of parole or probation"); *Bronowicz v. Allegheny County*, No. 12-1023, 2013 WL 5724520, at *11-15 (W.D. Pa. Oct. 21, 2013) (probation revocation); *Pollard v. Luzerne County Adult Probation*, No. 11-cv-2195, 2012 WL 4101889, at *2 (M.D. Pa. Sept. 18, 2012) (probation revocation); *Burton v. Delaware Cnty. Court House*, No. 12-4175, 2012 WL 3223691 (E.D. Pa. Aug. 7, 2012) (probation revocation).

Here, all of Plaintiff's claims stem from the issuance of the VOP Detainer. While a final hearing on the revocation of Plaintiff's probation has not yet occurred, it is clear that Plaintiff's success in this action would necessarily imply the invalidity of his detention for the alleged probation violations. Plaintiff has not alleged, and public records do not indicate that he has been acquitted of the charges that prompted his detention for violating his probation or that his probation has already been revoked and overturned on appeal or otherwise declared invalid. In light of the foregoing, Plaintiff's claims are barred by *Heck* unless or until he has met the conditions of *Heck*. *See Shreve v. Minium*, No. 1:cv-12-2128, 2012 WL 6137992 (M.D. Pa. Nov. 19, 2012) (finding the plaintiff's challenge to his probation violation detainer and probation revocation sentence barred under *Heck*); *Pollard v. Luzerne County Adult Probation*, No. 1:11-

---

[5] The required analysis focuses on the remedy resulting from a prisoner's success on the merits of his or her claims, rather than on the particular remedy sought by the complaint. Thus, even if the prisoner seeks monetary damages for the claimed constitutional violation, as Plaintiff does here, his complaint is not cognizable under § 1983 when success on the merits "necessarily impl[ies] the invalidity of the punishment imposed." *Wood v. Balisok*, 520 U.S. 641, 648 (1997).

9

cv-2195, 2012 WL 4101889 (M.D. Pa. Sept. 18, 2012) (same). As such, his Complaint will be dismissed without prejudice. *See Brown v. City of Philadelphia*, 339 F. App'x 143, 145-46 (3d Cir. 2009) (dismissal under *Heck* should be without prejudice).[6]

### 2. **Alternative Basis for Dismissal**

Given the Court's decision that Plaintiff's claims are barred under *Heck*, and that this case is subject to dismissal on this basis alone, further inquiry into such claims is not required. However, the Court will briefly address Defendant's additional meritorious defenses to Plaintiff's claims.

### a. **Eleventh Amendment Immunity.**

---

[6] Although there has not yet been a final hearing on Plaintiff's probation revocation, he should be aware that the means of challenging the execution of a probation revocation is to file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Williams v. Consovoy*, 453 F.3d at 177 ("It is well-settled that when a state prisoner is challenging the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus, not a § 1983 action.") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)); *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002).

The Court notes that Plaintiff prematurely filed a habeas corpus petition challenging his violation of probation detention. That petition, docketed at Civil Action No. 13-54, was dismissed without prejudice because Plaintiff is still a pretrial detainee in the course of ongoing state criminal proceedings and has not yet exhausted his state court remedies. In CA No. 13-54, the Court noted that if convicted, Plaintiff would be brought before the Court of Common Pleas to address his revocation of probation in a final hearing before Judge Todd. According to Plaintiff's docket sheet for his criminal case at docketed at CP-02-CR-0010837-2012, he is still awaiting trial, and, therefore, he has not yet had his final revocation hearing for his criminal case at CP-02-CR-0001101-2007.

As this Court pointed out, Plaintiff will have an opportunity to raise, or resolve, his federal claims in state court before or during his proceedings, or in a direct or post-conviction appeal. Only after he has exhausted his state court remedies can he file a petition for writ of habeas corpus in federal court challenging his probation revocation conviction and sentence. However, as discussed, a § 2254 habeas petition is the proper vehicle for Plaintiff to raise these claims; not a civil rights action. *See Preiser*, 411 U.S. at 499 (holding that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody).

Defendant is entitled to Eleventh Amendment immunity to the extent he is sued in his official capacity. Pursuant to the Eleventh Amendment to the Constitution, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania, and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically invoked its Eleventh Amendment immunity in 42 Pa. C.S.A. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, *see* 42 Pa. C.S.A. § 8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. C.S.A. § 8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to claims involving the various county common pleas court agencies, like county probation offices, which are defined by statutes as institutions of state governing. *Haybarger v. Lawrence Cnty. Adult Prob. And Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity"); *see, e.g., Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000) (noting that "[a]ll courts and agencies of the unified judicial system" are part of the Commonwealth government); *Walters v. Washington County*, No. 06-1355, 2009 WL 7936639

(W.D. Pa. Mar. 23, 2009); *Van Tassel v. Lawrence County Domestic Relations Section*, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, the Court finds that Defendant, to the extent he is sued in his official capacity, is entitled to Eleventh Amendment immunity.

### b. **Authority to issue the VOP Detainer.**

Plaintiff claims that Defendant did not have the authority to issue the VOP Detainer because the sentencing court, i.e., Judge Todd, had not ordered his detainment. Plaintiff's argument is predicated on the fact that the VOP Detainer is not signed by Judge Todd and there is no entry on the docket indicating that it was issued by Judge Todd.[7]

Defendant is identified as a Probation Officer assigned to the Court Liaison Unit and employed by the Allegheny County Adult Probation Department in the Court of Common Pleas, Fifth Judicial District of Pennsylvania. A county probation department operates under the authority of the court. *See Commonwealth v. Druce*, 868 A.2d 1232, 1238 (Pa. Super. 2005) (Dauphin County Adult Probation and Parole Office is an arm of the court); *L.J.S. v. State Ethics Com'n*, 744 A.2d 798, 802 (Pa. Commw. Ct. 2000) (County's chief adult probation officer was a "judicial officer"). The courts of common pleas in Pennsylvania delegate authority to county probation officers to detain defendants who violate probation. *See Commonwealth v. Kelly*, 931 A.2d 694, 698 (Pa. Super. 2007) (county probation department, as agent of court, was authorized to detain defendant for violating his probationary sentences); *see also* 42 Pa. C.S.A. § 9913 (a probation officer shall have police powers and authority throughout this Commonwealth to arrest, with or without a warrant, writ, rule or process, any person on probation, intermediate

---

[7] It is unclear whether Plaintiff also challenges the actual existence of the VOP Detainer. To the extent that he does, the Court has already found the VOP Detainer to be "indisputably authentic". Besides, Plaintiff's success in this action is necessarily contingent on its existence. Therefore, the Court will construe this solely as a challenge to the VOP Detainer's validity based on Defendant's authority and jurisdiction to issue it.

punishment, or parole under the supervision of the court for failing to report as required by the terms of that person's probation, intermediate punishment or parole or for any other violation of that person's probation, intermediate punishment or parole.) As such, Defendant, as an agent of the court, had the authority to issue the detainer against Plaintiff for allegedly violating his probation. There is no law of which the Court is aware, or to which Plaintiff has cited, that prohibits county probation officers from issuing violation of probation detainers.

### c. Jurisdiction to issue VOP detainer.

Plaintiff next claims that Defendant did not have jurisdiction to issue the VOP Detainer based on charges that were filed before he started his term of probation. He claims that because the alleged criminal activity for which the VOP Detainer was issued occurred prior to the start of his probation it cannot be a violation of that probation since it was not yet in effect. Thus, Plaintiff maintains that the trial court had no authority to detain him for probation violations in CP-02-CR-0001101-2007 solely on the basis of his arrest for the charges at CP-02-CR-0010837-2012.

Plaintiff concedes that, in the Commonwealth of Pennsylvania, a criminal defendant's probation may be revoked by the sentencing court prior to the actual commencement of his or her probation. However, he argues that there can be a revocation only when there has been a new criminal conviction, not simply an arrest. This exact argument was made by the appellant and rejected by the Superior Court of Pennsylvania in *Commonwealth v. Hoover*, 909 A.2d 321 (Pa. Super. 2006).

In *Hoover*, the appellant challenged the trial court's authority to revoke both of the probationary periods of his DUI sentences before he had begun to serve either of them after he was found intoxicated while on work release. Distinguishing his case from those where trial

courts had revoked probationary periods from defendants who had committed new criminal offenses before their probation periods had commenced, the appellant in *Hoover* argued that the trial court exceeded its authority to do so in his case because he did not violate the law by becoming intoxicated. Quoting its prior holding in *Commonwealth v. Wendowski*, 420 A.2d 628 (Pa. Super. 1980), the Superior Court disagreed, stating

> If, at any time before the defendant has completed the maximum period of probation, or **before he has begun service of his probation**, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public, or the defendant, the court could revoke or change the order of probation. A defendant on probation has no contract with the court. He is still a person convicted of a crime, and the expressed intent of the Court to have him under probation beginning at a future time does not "change his position from the possession of a privilege to the enjoyment of a right." *Burns v. United States*, 287 U.S. 216, 222 (1932).

*Hoover*, 909 A.2d at 323-34 (quoting *Wendowski*, 420 A.3d at 630) (emphasis in original). While the appellant in *Hoover* did not "violate the law by becoming intoxicated," the trial court revoked his probation concluding that the appellant would be difficult to supervise and posed a risk to the community due to his history of alcohol abuse and inability to control his addiction to alcohol. The Superior Court affirmed the trial court's revocation of probation because the appellant had demonstrated to the trial court that he was "unworthy of probation" and that it "would not be in subservience to the ends of justice [or] the best interests of the public." *Id*.

Even though Plaintiff's probation has not yet been revoked, the sentencing court has the authority to revoke his probation notwithstanding the fact that his probationary period has not yet commenced. Additionally, to the extent Plaintiff argues that, pursuant to *Commonwealth v. Sims*, 770 A.2d 346, 352 (Pa. Super. 2001), "an arrest alone, without facts to support the arrest, is not sufficient to revoke probation or parole[,]" Plaintiff is reminded that he has not yet appeared before the sentencing court in a final probation revocation proceeding. He has only been

14

detained on the alleged probation violations based on an arrest for new criminal activity, and he will not appear for a final probation violation hearing until the resolution of those charges at CP-02-CR-0010837-2007. Finally, to the extent Plaintiff argues that a determination of guilt must be made before a violation of probation detainer can be issued, he is incorrect. The Supreme Court has stated that probation violation detainers "may easily be based on arrests alone". *Carchman v. Nash*, 473 U.S. 716, n.3 (1985).

### d. <u>Due process</u>

Plaintiff next alleges several violations of due process in connection with his violation of probation proceedings, namely that he was denied a Gagnon I hearing and written notice of the nature of the alleged violations of his probation.

Due process is a flexible concept and calls for such procedural protections as the, particular circumstances require. *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). A defendant has a liberty interest in the revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (minimum due process requirements for probation revocation are identical to those established in *Morrisey v. Brewer*, *supra*, for parole revocation). Although revocation of probation, like revocation of parole, is not part of a criminal prosecution, it entails a loss of liberty and minimum due process must therefore be accorded the probations. *Commonwealth v. Davis*, 336 A.2d 616, 620 (Pa. Super. Ct. 1975) (citing *Gagnon*, 411 U.S. at 781). Specifically, a two-step revocation procedure must be followed: a probationer is entitled to two hearings, one is a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of probation (a Gagnon I hearing), and another, more comprehensive hearing prior to a final revocation decision (a Gagnon II hearing). *See id*. at 620.

When the alleged violation of probation is the commission of a crime, the Gagnon I hearing requirement is satisfied by a preliminary hearing at which the prosecutor has proved a prima facie case. *Davis*, 336 A.2d at 622-23 (1975); *see also Commonwealth v. Parker*, 366 A.2d 941 (Pa. Super. Ct. 1976) ("We have . . . held that a preliminary hearing resulting in a parolee's being held for court complies with the requirements of a Gagnon I hearing."). This is because "the Gagnon I hearing is similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial: the Commonwealth must show probable cause that the violation was committed." *Davis*, 336 A.2d at 621.

On April 25, 2012, Plaintiff was arrested and detained pursuant to the new criminal charges at CP-02-CR-0010837-2012. On August 17, 2012, Plaintiff received a criminal preliminary hearing at which it was determined there was probable cause for his arrest and detainment. Thus, Plaintiff received adequate procedural due process for purposes of his probation violation at CP-02-CR-0001101-2007.

Furthermore, Plaintiff's claim that he did not receive written notice of the nature of his alleged probation violations is rebutted by his signature on the PBPP's "Notice of Charges and Hearing" form that was given to him on May 10, 2012, and which listed "new criminal charges" as the reason for his violation of probation detention hearing.

    e. **<u>Sixth Amendment.</u>**

Plaintiff claims that he was denied his Sixth Amendment right to offer testimony of favorable witnesses and "to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. The Supreme Court has extended the Compulsory Process clause to cover a criminal defendant's right to present witnesses or evidence in his defense, "even though [such a right] is not expressly described in so many words." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).

However, the Compulsory Process clause protects the presentation of a defendant's case from unwarranted interference by the government, not conduct of a private individual like Plaintiff's landlord. Actions by private individuals qualify as "state action" only when the private actor (1) has engaged in the performance of a public function traditionally reserved for the state, (2) has acted with the help of or in concert with state officials, or (3) has a symbiotic relationship with the State such that the State has "so far insinuated itself into a position of independence" with the private actor that it must be considered a joint participant in the challenged activity. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (citations omitted). In the present case, Plaintiff's landlord is not a defendant, and, even if he were, there is no allegation or argument to suggest that he engaged in any kind of state action. Therefore, this claim fails because there was no action taken under color of state law; a basic requirement for a section 1983 claim.

### f. **False imprisonment.**

Finally, Defendant, as an employee of Allegheny County, is entitled to governmental immunity against Plaintiff's state tort claim of false imprisonment. In this regard, the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541-64, grants governmental immunity to local agencies, including municipalities, against claims for damages on account of any injury to a person or to property caused by their own acts or the acts of their employees. Immunity is abrogated, however, for negligent acts falling into one of eight proscribed categories, 42 Pa. C.S.A, § 8542(b), none of which apply in this case.

An employee of local agency acting within the scope of his duties enjoys the same immunity as the local agency, 42 Pa. C.S.A. § 8545, but the employee may be stripped of his immunity when he engages in conduct that is found to constitute "a crime, actual fraud or willful

17

misconduct," *id*. at § 8550.  In other words, the PSTCA extends immunity to negligent acts by employees except those falling into the eight proscribed categories, but abrogates immunity for individual employees who commit intentional torts.  *See*, *e.g.*, *Maloney v. City of Reading*, No. 04-5318, 2006 WL 305440, at *5 (E.D. Pa. Feb. 8, 2006).

There is nothing in the Complaint to suggest that Defendant was not acting within the scope of his employment when he issued the VOP Detainer, or engaged in criminal or willful misconduct which would strip away his immunity.  Nevertheless, Plaintiff fails to state a claim against Defendant even if he were not entitled to such immunity.

To state a claim for false imprisonment, a plaintiff must sufficiently allege the following two elements: "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.  *Id*.; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983.")  Here, Plaintiff received a preliminary hearing on August 17, 2012, at which time probable cause was found for his arrest in CP-02-CR-0010837-2012.  Because this arrest served as the basis for the issuance of the VOP Detainer in CP-02-CR-0001101-2007, Plaintiff cannot state a claim for false imprisonment.

Accordingly, this 3rd day of September, 2015,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

                                                    LISA PUPO LENIHAN
                                                    United States Magistrate Judge

cc:       Dion Lee McBride
           91690 3D
           Allegheny County Jail
           950 2nd Avenue
           Pittsburgh, PA  15219-3100